UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY RUSSELL,
ROGER RUSSELL, and
MARY HALL,
Plaintiffs,
-vs.-

Case No. 1:10-cv-01224
Hon. Chief Judge Paul L. Maloney

GOLDMAN ROTH ACQUISITIONS, LLC
a foreign limited liability company and
ROBERT VAIDEN a/k/a WILLIAM KRAMER,
jointly and severally,
Defendants.

_____

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF THEIR FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT PURSUANT TO FED.R.CIV.P 56(A) AND REQUEST FOR ORAL ARGUMENT.

Plaintiffs move this court for Summary Judgment Pursuant to Fed.R.Civ.P. 56(a) for the

reasons cited in the attached brief.

Plaintiffs' counsel has had at least one email exchange with Defense counsel, seeking his

concurrence to this motion. Defendants have refused to so concur.

**WHEREFORE**, Plaintiffs move this court to grant Summary Judgment in their favor as

to Count I of their First Amended Complaint for Violation of the Fair Debt Collection Practices

Act.

1

Respectfully submitted,

September 13, 2011

/s/ Gary Nitzkin
GARY D. NITZKIN  P41155
MICHIGAN CONSUMER CREDIT LAWYERS
Attorneys for Plaintiff
22142 West Nine Mile Road
Southfield, MI 48033
(248) 353-2882
Fax (248) 353-4840
Email – gary@micreditlawyer.com

## Proof of Service

I, Brandy Moore, hereby state that on 09/13/2011, I served a copy of the within pleading upon all counsel as their address appear of record via the court's CM/ECF System.

/s/ Brandy Moore

# TABLE OF CONTENTS

## Contents

Plaintiff's Motion for Summary Judgment as to Count I of their First Amended Complaint for Violation of the Fair Debt Collection Practices Act pursuant to Fed.R.Civ.P 56(a) and Request for Oral Argument. ................................................................................................ 1

Table of Contents ............................................................................................................... 3

Index of Authority .............................................................................................................. 5

Questions Presented: ........................................................................................................... 6

Brief in Support OF Plaintiff's Motion for Summary Judgment as to Count I of their First Amended Complaint for Violation of the Fair Debt Collection Practices Act pursuant to Fed.R.Civ.P 56(a) and Request for Oral Argument. ........................................................... 7

Introduction ........................................................................................................................ 7

Facts ................................................................................................................................... 7

About Goldman Roth .................................................................................................... 7

About Robert Vaiden ................................................................................................... 8

About Nathan Ormsby ................................................................................................. 8

The Debt ....................................................................................................................... 9

The Plaintiffs ............................................................................................................... 9

The Defendants' third party contacts ......................................................................... 10

Defendants' illegal contacts made to Mary Hall ................................................. 10

Emotional Damages caused to Mary Hall by the Defendant's illegal contacts. ....... 12

Defendants' illegal contacts made to Tammy Russell ........................................ 12

Emotional damages suffered by Tammy due to the Defendants' calls.................... 14

Defendants' illegal phone calls made to the Russell neighbor, Jacques Henning .... 14

Defendants' illegal phone calls made to the Russell's daughter, Nicole Russell. .... 15

Defendants' illegal phone calls made to Missy Gelderbloom. ................................ 15

Defendants' illegal phone calls made to Rae Lynn Rusco. ..................................... 15

Defendants' illegal phone calls made to Katie Van Dunin and Candy Hall............. 16

Defendants failed to issue a validation letter to either Roger or Tammy Russell......... 16

Procedural History ........................................................................................................... 17

Standard for deciding a motion under  Fed.R.Civ.P. 56(a).............................................. 17

LAW AND ARGUMENTS .............................................................................................. 18

The Plaintiffs are entitled to Summary Judgment on their claims under the Fair Debt Collection Practices Act.................................................................................................. 18

Defendants violated Plaintiffs Roger and Tammy Russell's rights against Third Part Communications. ......................................................................................................... 19

The Defendants violated the plaintiffs' rights under 15 U.S.C. 1692d by engaging in conduct the natural consequences of which were to harass, oppress and abuse them.............. 20

Defendants' collection calls to Tammy Russell and Mary Hall knowing that Jordan is in a hospital bed with a life threatening brain injury are harassing, oppressive and abusive. .................................................................................................................... 21

The Defendants' pattern of contacting numerous third parties to the Debt including business associates, a neighbor, family members, and acquaintances from over 20 years earlier is harassing, oppressive and abusive. .................................................................. 22

The Defendants violated the plaintiffs' rights under 15 U.S.C. 1692e by making false and misleading representations to the plaintiffs and others. ..................................................... 22

The Defendants violated Roger Russell's rights under 15 U.S.C. 1692g by failing to send a letter to him advising him of his rights. ...................................................................... 23

Conclusion ................................................................................................................ 24

Exhibit List............................................................................................................... 25

# INDEX OF AUTHORITY

### Cases

*Anderson v. Liberty* ............................................................................................................... 17

*Celotex* .................................................................................................................................. 17

*Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007) .............................. 18

*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). .................... 17

*Stojanovski v Strobl & Manoogian,*. 783 F. Supp 319, 323 (E.D. Michigan 1992) ...................... 19

### Statutes

*15 U.S.C. 1692a(3)* ................................................................................................................ 19

*15 U.S.C. 1692c(d)* ................................................................................................................ 12

15 U.S.C. 1692d ..................................................................................................................... 20

15 USC 1692(g) ..................................................................................................................... 22

*15 USC 1692a* ....................................................................................................................... 18

15 USC 1692b(b): ................................................................................................................... 19

15 USC 1692e ........................................................................................................................ 22

### Rules

Fed.R.Civ.P. 56(a) ................................................................................................................. 17

# QUESTIONS PRESENTED:

Whether Defendants' contacts with third parties to the debt at issue in this case violated the Plaintiff's rights under the Fair Debt Collection Practices Act.

Plaintiffs respond: "Yes."
Defendants respond: "No."

Whether Defendants' contacts made in connection with the collection of the Debt at issue in this case, violated other provisions of the Fair Debt Collection Practices Act.

Plaintiffs respond: "Yes."
Defendants respond: "No."

6

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF THEIR FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT PURSUANT TO FED.R.CIV.P 56(A) AND REQUEST FOR ORAL ARGUMENT.**

## INTRODUCTION

This case represents one of the most egregious violations of the Fair Debt Collection Practices Act ("FDCPA") that this writer has ever seen. Goldman Roth Acquisitions ("GRA"), and its debt collector, Robert Vaiden have embarrassed, terrorized and humiliated the Plaintiffs in this case in an attempt to collect a debt that was once owed by Roger Russell and had been paid long ago. The Debt is indisputably, beyond the Statute of Limitations.

In his deposition, Mr. Joseph Thompson, a 50% co-owner of Goldman Roth, did little more than snicker and bait Plaintiffs' counsel as he openly condoned his collector's actions based on the fact that his company had only been sued three times in the last year for similar violations of law. He attributes these gross violations of the FDCPA and the concomitant actions as a cost of doing business. *(Ex 2 - pp 82)*.

## FACTS

### ABOUT GOLDMAN ROTH

Goldman Roth Acquisitions ("GRA") is a debt buyer and not a law firm (*Ex 1 - pp 9*). GRA purchases old and charged off consumer debt and attempts to collect on it itself. It operates out of Amherst, New York and has done so for the last 2.5 years (*Ex 2 - pp 5*). It employs about a dozen debt collectors (*Ex 1 - pp 23*). As discussed below, GRA's debt collectors are governed by the FDCPA and yet receive no training in this statute by GRA. *(Ex 2 - pp 9)*.

7

GRA is owned 50% by Joseph Thompson and 50% by Jason Buzak. In his deposition, Mr. Thompson was presented with several other FDCPA lawsuits filed against GRA in the past year. He investigated none of them. (*Ex 2 - pp 69-76*). He did not investigate the facts involved in this action. (*Ex 2 - pp 78*). He also believes these other FDCPA lawsuits are simply a cost of doing business and condoned his collectors' actions. (*Ex 2 - pp 82*).

GRA's day-to-day operations were co-managed by Robert Vaiden who exclusively used the alias "William Kramer" (*Ex 6 - interrogatory answer 7*) and by and Jason Dubrule (*Ex 1 - pp 11*). GRA possesses no policy or procedure manuals (*Ex 2- pp 68*). GRA has no policies or procedures to avoid violations of the FDCPA. (*Ex 2- pp 69*).

### ABOUT ROBERT VAIDEN

Vaiden was a supervisor GRA from the beginning of 2010 until he stepped down in April or May of 2011. (*Ex 1- pp 27*). Vaiden's compensation is the sum of a salary plus a commission based upon collections (*Ex 1- pp 12*). Vaiden exclusively uses the alias "William Kramer" when speaking with consumers (*Ex 6 - interrogatory answer 7*).

In his deposition, Mr. Vaiden was quizzed about what classes of persons that he, as a debt collector, was allowed to contact in connection with the collection of a debt pursuant to the FDCPA. He was completely ignorant. (*Ex 1- pp 44-52*).

### ABOUT NATHAN ORMSBY

Mr. Ormsby has been a debt collector at GRA since September of 2010. (*Ex 3- pp 6*). He is paid hourly plus a bonus based upon collections. *Id*. Like Vaiden, he received no training in the FDCPA at Goldman Roth (*Ex 3- pp 13*). When quizzed about who he may contact in

8

connection with the collection of a consumer debt under the FDCPA, Ormsby was as completely clueless as Vaiden was in his deposition. (*Ex 3- pp 23-25*).

### THE DEBT

In November of 2010, GRA purchased a debt allegedly originally owed by Roger Russell to Art Van Furniture ("the Debt"). The Debt originated in 1993 *(Ex 4)*. According to Mr. Russell, this debt was satisfied many years ago (*Ex 5 - pp 17*). GRA does not know whether any payments had ever been made on the Debt other than the money that the defendants terrorized out of plaintiff Tammy Russell (*Ex 2 - pp 66*). Hence this debt is indisputably outside the Michigan Statute of Limitations which is four years from the date of breach. *MCL 440.2725*.

GRA assigned the collection of the Debt to Nate Ormsby (*Ex 1 - pp 13*). It's undisputed by GRA that the only potential obligor on the debt is Roger Russell (*Ex 1 - pp 62, and Ex 3 - pp 27, 29*).

### THE PLAINTIFFS

Roger Russell is married to Tammy Russell. They have been married since October 2, 1993 (*Ex 7 - pp 10*) which is approximately one month after the Debt was initiated by Roger (*Ex 4*).

Mary Hall is Tammy's mother and Roger's mother-in-law. Strangely, the defendants never spoke with Roger Russell in their attempt to collect the Debt.

### THE DEFENDANTS' THIRD PARTY CONTACTS

As discussed below, the FDCPA is a strict liability statute. It governs the conduct of consumer debt collectors.  It generally prohibits a debt collector from contacting third parties to a debt and prohibits certain types of conduct by debt collectors.  In this case, the FDCPA held no sway over the defendants as they contacted the following parties in connection with the collection of the Debt:

### *Defendants' illegal contacts made to Mary Hall*

Mary Hall is a plaintiff in this action. She's a third-party to the Debt because she is not obligor on it. Ms. Hall was first contacted by Robert Vaiden in October of 2010. *(Ex 8 - pp 13)*. Vaiden, using his alias William Kramer, contacted Hall on her home phone. *(Id. at 15)*.  Vaiden told Ms. Hall that "Tammy and Roger are in trouble."  Over time, Vaiden's calls became more aggressive.

In his third contact with Ms. Hall he said "it's imperative that Tammy and Roger called [him] and that they are in serious financial trouble."  When Ms. Hall asked about the nature of the trouble, Vaiden refuse to say anything more other than Mary Hall may have to help them financially. *(Id. At 24 – 26)*.

In another conversation Vaiden misrepresented the Hall that "he is going to do everything he can to help them have to pay less money."  *(Id at 30)*. Subsequently Vaiden disclosed the debt and misrepresented to Ms. Hall that Tammy was an obligor on it. Vaiden threatened to garnish Roger's wages. *(Id at 32)*. Vaiden asked Mary if she could pay the debt. *(Id at 33)*.  Indeed, the Defendant's collection notes reveal:

> spoke with mary the mother. she is very nice, said she helped out the ch (card holder") in the past, but feels like she needs to stop because she wonders when it

10

will all end.....WE MAY STILL BE ABLE TO TALK HER INTO IT. she said
that she would without a doubt get the info over to the ch and have her call us.

(Ex 14 - pp 2).

On October 21, 2010 Tammy and Roger's son, Jordan Russell (Mary Hall's grandson)
was seriously injured in the high school football game. Jordan was admitted to the hospital for
seven days. (*Ex 7 - pp 23*). During the course of her conversations with Mr. Vaiden, Ms. Hall
disclosed the serious football injury that had befallen Jordan and the fact that he was in the
hospital with a brain injury. *(Ex 8 - pp 51)*.  Vaiden twisted this information into an oppressive
advantage against Jordan's mom and grandmother.

Ms. Hall testified to a fourth contact that she had with Mr. Vaiden.  (*Ex 5 - pp  35 – 40*).
During this fourth contact, Vaiden was frustrated that he was unable to get Tammy Russell or
Mary Hall to pay the Debt.  Vaiden became even more aggressive in his attempts to collect the
debt from Mary Hall.  During this conversation, Vaiden said that "there could be a warrant out
for Tammy and Roger's arrest. (*Id. at 35*). He also said that Tammy was embarrassed and
ashamed and didn't want to disclose to her mother that they are in deep financial trouble. (*Ex 8 -
pp 37*). Vaiden assured Ms. Hall that her own daughter was lying to her. (*Id at* 38). Vaiden then
told Ms. Hall that "this is a very serious that there is a court order right in front of him and if they
don't pay they could lose their house, their car, their pension make both end up in jail." (*Id at*
39).  A terrified Mary Hall gave Tammy's cell phone number to Vaiden.  *Id*.

Vaiden had a sixth contact with Mary Hall sometime in November 2010. (*Id at* 43 – 44).
During this conversation he said that Tammy needed to pay more money because "he couldn't
hold the creditors off much longer." (*Id at* 44).

On December 6, 2011, the defendants contacted Ms. Hall 11 times. (*Id at* 49).

11

On Vaiden's seventh and final contact with Mary Hall, she told him to stop calling her. (*Id at* 50). Undaunted, Vaiden demanded full payment by either Tammy or Mary Hall. (*Id at* 57). Vaiden said he needed the money right now. (*Id at* 52). Ms. Hall said that her brother is an attorney wanted to speak to the attorney that Vaiden works for. (*Id at* 53). Vaiden hung up. *Id*. Mary Hall was terrified. (*Id at* 54).

Vaiden always gave Ms. Hall the impression that the Debt belong to Tammy. (*Id at* 57).

### *Emotional Damages caused to Mary Hall by the Defendant's illegal contacts.*

Vaiden's actions caused a rift in Mary's relationship with Tammy. (*Id. at* 67). Mary had a close relationship with Tammy and her other daughters. *Id*. Mary felt terrible that Tammy would not take her calls. (*Id at* 69). The rift between mother and daughter lasted a month.

Mary is now scared to answer her telephone. (*Id at* 72). Tammy and Mary have fought over these calls that were made by Vaiden. (*Id at* 73). Vaiden calls caused Mary to break down and cry two times. Mary's fights with Tammy were due to Vaiden's calls. (*Id at* 79). Ms. Hall also broke down and cried when she talked with her other daughter, Lori, about Vaiden's phone calls. (*Id at 80*).

### *Defendants' illegal contacts made to Tammy Russell*

As discussed below, the FDCPA generally prohibits third-party contacts with persons other than the debtor. One exception to this rule is that a debt collector may discuss the debt with the consumer's spouse. *15 U.S.C. 1692c(d).* However, the debt collector may not attempt to collect the debt from the spouse unless the spouse is a co-debtor. In this case, although the

defendants were legally entitled to discuss the debt with Tammy Russell, they certainly were not allowed to attempt to collect the Debt from her as she is not an obligor. They did so anyway.

Tammy first got a call from Goldman Roth in July of 2010. *(Ex 7 - pp 12)*. Vaiden first made contact with Tammy and misrepresented himself as an attorney representing HSBC. He was attempting to collect the Debt from her, personally. *(Id at* 16, 45). When Tammy demanded validation of the debt, (as is her right under the FDCPA), Vaiden hung up on her. *(Id at* 17). After that conversation Vaiden had called Tammy two times per week up to the end of October 2010 when her15 year old son, Jordan, was severely injured. *(Id at* 18). Tammy never had any conversation with anyone other than Vaiden. *(Id at* 20). After Vaiden obtained Tammy's cell phone number from her mother, Vaiden began calling Tammy on her cell phone in the middle of October 2010. *(Id at* 20). Tammy identified last four digits of the two phone numbers that she was chronically contacted from by the defendants. *(Id at* 23). These phone calls increased while she was sitting in the hospital with her son who was severely injured in a football game. *Id.*

On November 2, 2010, Tammy responded to a voicemail that Vaiden had left on Nicole Russell's cell phone (Tammy and Roger's adult daughter). *(Id at* 29). During that conversation Vaiden told Tammy she was going to lose her house, her car, and all her personal property, and that the defendants were going to freeze her bank accounts and garnish her wages. *Id.* He then questioned the kind of mother that Tammy was to let her house get taken with her severely injured son laying in a hospital. *Id.* Cowering from this abuse, Tammy told Vaiden that she would call him back on November 17 after she got her husband's first unemployment check. Vaiden said he would hold off from taking Tammy to court. *(Id at* 30). The defendants contacted Tammy every day after that conversation until December 10, 2010. *(Id at* 30, 38).

13

On November 16, 2010, Tammy called Vaiden. During this conversation, Vaiden demanded $2,600 from her. He agreed to reduce the amount of $1,500. *Id.* During this negotiation of a debt that Tammy didn't owe, she started to cry and agreed to pay $550 to GRA. *Id.* Tammy called back later that evening to give him her debit card. (*Id at* 34-34).

### *Emotional damages suffered by Tammy due to the Defendants' calls.*

Because of the defendants' phone calls, Tammy had to switch her anti-anxiety medication. Her relationship with her mother became strained. (*Id at* at 53). Tammy was disappointed and hurt that her mother chose to believe the Defendants' lies over what Tammy had told her. *Id.* The relationship had been damaged to the point where Tammy would not take her mother's phone calls. *Id.* Before the Defendant began its campaign of telephone terror on Mary and Tammy, they were very close. They spoke to each other 4-5 times per week or more. (*Id at* 54). Their relationship was solely damaged by these phone calls made by the defendants. *Id.*

### *Defendants' illegal phone calls made to the Russell neighbor, Jacques Henning*

The Defendants called Jacques Henning on December 6, 2010. (*Id at* 37). Vaiden misrepresented himself as an attorney representing Tammy and Roger in connection with their son's football injury. *Id.* Vaiden told Henning that he was unable to get in touch with his "clients" so that they could sign some very important papers. Jacques wrote down Vaiden's information and that Vaiden's request gave it to Tammy. *(Ex 9).*

14

### *Defendants' illegal phone calls made to the Russell's daughter, Nicole Russell.*

Nicole Russell is the daughter of Tammy and Roger. She received a voicemail from

Vaiden in which he misrepresented himself as a lawyer. In his voicemail to her, Vaiden stated

that he was representing her parents in connection with her brother's football injury. (*Ex 10 - pp*

*4).* Nicole was 21 years old at the time she received this voicemail from Vaiden.

### *Defendants' illegal phone calls made to Missy Gelderbloom.*

Tammy Russell is a daycare provider. One of the children in her day care center belongs

to Missy Gelderbloom. In October 2010 Vaiden and left a voicemail for Ms. Gelderbloom as

follows:

> MR. KRAMER: "Yes. Hi. A very important message here for, actually, Ms. Tammy
> Russell. And Melissa is the name here that's left with this phone number. You were left
> as a contact. My name is Bill Kramer. I'm sorry to bother you here. I'm actually trying
> my best to reach out to Tammy Russell. And being at this number, your name was left
> and provided as a possible contact. I really hope I can, you know, somehow just leave a
> message here. If you can get through to Tammy. It's concerning some pending
> paperwork that's in my office that is scheduled to be filed. It is very, very important
> information that I need to discuss with Tammy right away. If there's -- if you don't know
> who Tammy Russell is, please disregard the information and I do apologize, you know,
> for the mistake. But if you do know Tammy Russell, please make sure that you get my
> information to her right away and let her know how important it is that she contacts me
> here at the office. Again, Bill - William Kramer calling from Goldman and Roth, File
> No. 2021368. And my phone number here is (716) 242-7561. Thank you."
>         (End of voice mail)

This voicemail message was played during Ms. Gelderbloom's deposition into the record.

*(Ex 11 - pp at 5).*

### *Defendants' illegal phone calls made to Rae Lynn Rusco.*

Ms. Rusco was a friend of Tammy Russell's back in high school and has not had contact

with her in 25 years before receiving a call from Vaiden. (*Ex 12 - pp 6*). Ms. Rusco received a

voicemail from Vaiden on December 6, 2010. (*Id at* 4). In his voicemail, Vaiden asked Rusco to relay a message to Tammy Hall (Tammy Russell's maiden name). (*Ex 12 - pp 5*).

Rusco called Vaiden back and while Vaiden did not say to whom Tammy owed money, he did say that she owed money to someone in Kenwood, Michigan. (*Id at* 7). Vaiden asked Ms. Rusco to relay a message to Tammy to get touch with him. (*Id at* 8). Rusco sent a private e-mail to Tammy via Facebook informing her of Vaiden's contact. (*Ex 13*).

### *Defendants' illegal phone calls made to Katie Van Dunin and Candy Hall*

On December 6, 2010, Vaiden called Katie Van Dunin and left her a voicemail. Vaiden called her from "Goldman and Roth" and stated that he has "sensitive information" related to Tammy Russell. He asked her to contact Tammy Russell and left his contact phone number of 716-242-7561, file 2021368. Plaintiff's counsel has this voicemail in its office.

Candy Hall is Tammy Russell's ex-step mother. She was also contacted by the Defendants.

While the number of calls made by GRA in this case is in dispute, the fact that the Defendants contacted the above referenced individuals in connection with the collection of the Debt, is not in dispute. All of these phone calls violate the FDCPA and have caused damages to the Plaintiffs.

### DEFENDANTS FAILED TO ISSUE A VALIDATION LETTER TO EITHER ROGER OR TAMMY RUSSELL.

Defendant collection notes reflect that they had Roger Russell's home address and phone number at all times. (*Ex 14*). Yet, the defendants at no time issued any letter to Roger Russell

informing him of his rights to demand validation of the Debt as is required by the FDCPA at *15 U.S.C. 1692g. (Ex 5 - pp 24)*. None of the witnesses from GRA have any record of sending any letter or any written correspondence at all to Roger Russell (*Ex 3 - pp 41, and Ex 1 - pp 81*).

## PROCEDURAL HISTORY

Plaintiffs Tammy and Roger Russell filed the original complaint in this action naming Goldman Roth and William Kramer as defendants. (*Docket 1*). Through discovery, the plaintiffs learned that there is no individual named William Kramer. Instead, this was an assumed name for Robert Vaiden. The plaintiffs ultimately were joined by Mary Hall and filed a first amended complaint naming Robert Vaiden as a party defendant (*Docket 17*).

In their First Amended Complaint, the plaintiffs have pled five claims against the defendants for: 1. violation of the Fair Debt Collection Practices Act; 2. Violation of the Michigan Collection Practices Act, 3. Intentional Infliction of Emotional Distress, 4. Conversion, and 5. Invasion of Privacy. *Id.*

In this motion, Plaintiff has shown that there is no genuine issue as to any material fact as to their claim for Violation of the Fair Debt Collection Practices Act and that they are entitled to a judgment as to liability on these claims.

## STANDARD FOR DECIDING A MOTION UNDER FED.R.CIV.P. 56(A)

Fed.R.Civ.P. 56(a) states: "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e). In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## LAW AND ARGUMENTS

### THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS UNDER THE FAIR DEBT COLLECTION PRACTICES ACT.

Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007)

The statute contains the following definitions at *15 USC 1692a*:

> (2) The term "**communication**" means the conveying of information regarding a debt directly or indirectly to any person through any medium.
> (3) The term "**consumer**" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "**creditor**" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term "**debt**" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "**debt collector**" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

In the case before this court, there is no dispute that GRA and Vaiden are both debt

collectors as defined by the FDCPA. Moreover, the Debt is a consumer type debt falling within

the ambit of the FDCPA.

The FDCPA is a strict liability statute. Thus, proof of one violation is sufficient to

support summary judgment for plaintiff. *Stojanovski v Strobl & Manoogian*,. 783 F. Supp 319,

323 (E.D. Mich. 1992).

### DEFENDANTS VIOLATED PLAINTIFFS ROGER AND TAMMY RUSSELL'S RIGHTS AGAINST THIRD PARTY COMMUNICATIONS.

The FDCPA prohibits a debt collector from communicating with third parties in

connection with the collection of a debt. This statute provides at 15 USC 1692b(b):

> COMMUNICATION WITH THIRD PARTIES. Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

In the case before this court, it's undisputed that the only potential debtor to the Debt is Roger Russell. (*Ex 6 - Interrogatory Answer 4*).  However the statute's definition of "Consumer" includes any natural person who is allegedly obligated to pay the debt as well.  *15 U.S.C. 1692a(3)*.  In this case, GRA has attempted to collect the Debt from Tammy Russell.  Indeed, the Defendants told numerous people that she was an obligor on the Debt as well. Hence Tammy Russell is a Consumer within the meaning of the FDCPA.  The defendants contacted Mary Hall and attempted to collect a debt from her as well. They also contacted Jacques Henning, Melissa Gelderbloom, Rae Lynn Rusco, Nicole Russell, and Katie Van Dunin, in violation of FDCPA. All of these persons are third parties to the debt and hence, GRA is and has been prohibited from contacting these persons in connection with the collection of the Debt.

The defendants dispute the number of phone calls that they made in this case.  However, the defendants don't dispute contacting all of the above third parties.  The fact that the Defendants called *any* of these third parties is a violation of the FDCPA. As noted above, the FDCPA is a strict liability statute.  Hence, the Defendants contacting any one of these third parties is enough to make it liable under the law.

### THE DEFENDANTS VIOLATED THE PLAINTIFFS' RIGHTS UNDER 15 U.S.C. 1692D BY ENGAGING IN CONDUCT THE NATURAL CONSEQUENCES OF WHICH WERE TO HARASS, OPPRESS AND ABUSE THEM.

15 U.S.C. 1692d of the FDCPA provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

20

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3)' of this Act.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 804, the placement of telephone calls without meaningful disclosure of the caller's identity.

The very wording of this section speaks to *all* conduct the natural consequences of which are to harass, oppress, or abuse. Hence it's not limited to only those items listed in the statute. Rather the items listed in this subsection are merely examples of harassment, oppression, and abuse. Moreover the statute addresses the rights of all "persons" and not just "consumers." Consequently the statute speaks to the rights of all three plaintiffs.

### *Defendants' collection calls to Tammy Russell and Mary Hall knowing that Jordan is in a hospital bed with a life threatening brain injury are harassing, oppressive and abusive.*

On October 21, 2010, Jordan Russell was severely injured in a football accident. As he was lying in the hospital for seven days, bed fighting for his life due to a severe brain injury, Robert Vaiden obtained Tammy's cell phone number and decided to step up his campaign of telephone terrorism against her. The Defendants called her during this time "non-stop." *(Ex 7 - pp 23)*. The Defendants knew that Jordan had been injured at this time because Mary Hall had told them so. *(Ex 8 - pp 51-52)*. Deliberately hounding a mother and grandmother while their kid is in a hospital cannot be seen as anything less than harassing, oppressive and abusive, if not completely unconscionable.

**The Defendants' pattern of contacting numerous third parties to the Debt including business associates, a neighbor, family members, and acquaintances from over 20 years earlier is harassing, oppressive and abusive.**

The FDCPA prohibited the Defendants from contacting any third parties to the Debt. Nevertheless, the defendants contacted at least six persons who were third parties to the Debt. One of these persons was Mary Hall who was so bullied and harassed by Robert Vaiden that to this day she's afraid to answer her own telephone. (*Ex 8 - pp 72*).

Moreover Vaiden so bullied and harassed Tammy Russell that she paid over $500 to GRA on the Debt which she did owe. She made this payment while Jordan was in the hospital due to the threats hurled upon her by Vaiden. This is precisely the type of conduct that Congress was addressing and sought to curtail when it is an act of the FDCPA.

## THE DEFENDANTS VIOLATED THE PLAINTIFFS' RIGHTS UNDER 15 U.S.C. 1692E BY MAKING FALSE AND MISLEADING REPRESENTATIONS TO THE PLAINTIFFS AND OTHERS.

15 USC 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The language of the statute is broad. It is also not limited to consumers or even people.

In the case before this court, the defendants made threats to Tammy Russell and Mary Hall that they were going to take the Russell's cars, their home and any other assets they had to satisfy the Debt. Neither of the Defendants had the present right or intention of taking any such action. The Debt had been paid long ago according to Roger Russell. (*Ex 5 - pp 20*). Even if he had not paid it off, the Debt is well outside the four year Statute of Limitations and hence is unenforceable. These sorts of baseless threats are garden-variety FDCPA violations.

More disturbing are the representations that Mr. Vaiden made that he was a lawyer or was affiliated with the law firm. Clearly the named Goldman Roth or is he sometimes put it

22

"Goldman and Roth" certainly gave the appearance that he working for a law firm. He

represented himself as a lawyer to Mr. Jacques Henning. He also held himself out as a lawyer to

Nicole Russell stating that he was representing her little brother, Jordan.

Vaiden alluded to the fact that he was a lawyer to Ms. Gelderbloom by misinforming her

that he had "very important documents" for the Russell's to sign.

Further still, Vaiden told Mary Hall that he worked for a lawyer. Interestingly, there is no

person named Goldman or Roth that is affiliated with GRA.  (*Ex 2 - pp 13*).

### THE DEFENDANTS VIOLATED ROGER RUSSELL'S RIGHTS UNDER 15 U.S.C. 1692G BY FAILING TO SEND A LETTER TO HIM ADVISING HIM OF HIS RIGHTS.

15 USC 1692(g) requires that within five days a debt collector's initial contact the

consumer is required to send a validation notice as follows:

> Within five days after the initial communication with a consumer in connection
> with the collection of any debt, a debt collector shall, unless the following
> information is contained in the initial communication or the consumer has paid the
> debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the
> notice, disputes the validity of the debt, or any portion thereof, the debt will be
> assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the
> thirty-day period that the debt, or any portion thereof, is disputed, the debt col-
> lector will obtain verification of the debt or a copy of a judgment against the
> consumer and a copy of such verification or judgment will be mailed to the
> consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day
> period, the debt collector will provide the consumer with the name and address of
> the original creditor, if different from the current creditor.

GRA has sent no written correspondence to either Roger Russell (*Ex 5 - pp 24*) or

Tammy Russell. Indeed, Vaiden testified that he was unaware of this requirement under the

FDCPA.  (*Ex 1 - pp 81 – 82*). Ormsby testified that he was unaware of whether GRA sent out

any letters to its debtors. (*Ex 3 - pp 41*). He also testified that he had never seen any letter sent out by GRA to any debtors, demanding payment. *Id.*

## CONCLUSION

There is no dispute that the Defendants have violated all of the Plaintiff's rights under the Fair Debt Collection Practices Act. This statute was designed to govern the conduct of third party debt collectors and curb the abuses that have given the industry a checkered history. Goldman Roth's violations of the FDCPA in this case are epic. They only have themselves to blame as they provide no training in this statute and no supervision. Finally, inasmuch as the company is half owned by Mr. Thompson who condones these violations and accounts for them as cost of doing business, it's time to make GRA and Robert Vaiden account for their horrible and terroristic actions.

Respectfully submitted,

September 13, 2011

/s/ Gary Nitzkin
GARY D. NITZKIN P41155
MICHIGAN CONSUMER CREDIT LAWYERS
Attorneys for Plaintiff
22142 West Nine Mile Road
Southfield, MI 48033
(248) 353-2882
Fax (248) 353-4840
Email – gary@micreditlawyer.com

# EXHIBIT LIST

1. Robert Vaiden deposition transcript
2. Joseph Thompson deposition transcript
3. Nathan Ormsby deposition transcript
4. The Debt
5. Roger deposition transcript
6. Defendant's Answers to Plaintiff's Interrogatories
7. Tammy Russell deposition transcript
8. Mary Hall deposition transcript
9. Jacques Henning writing.
10. Nicole Russell deposition transcript
11. Melissa Gelderbloom deposition transcript
12. Rae Lynn Rusco deposition transcript
13. Rusco email to Tammy
14. Goldman Roth Collection Notes